IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 16, 2017 Session

## MICHAEL TOMLIN, ET AL. v. RENAL CARE GROUP, INC. ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 10-1819-IV      Russell T. Perkins, Chancellor**

_____

### No. M2016-02216-COA-R3-CV

_____

A real estate consultant brought suit against a renal care company and related corporate affiliates alleging breach of contract for failing to pay real estate commissions. The commissions were allegedly owed based upon the consultant's work in negotiating one original lease for a dialysis clinic, and based upon several alleged renewals of leases that had originally been negotiated by the consultant. The parties' consulting agreement specified that the consultant was entitled to commissions upon execution of original leases, and at any subsequent renewals or extensions of the original leases. Because the order appealed is not final in that it fails to adjudicate at least six of the former consultant's claims, this Court lacks subject-matter jurisdiction over the appeal. Tenn. R. App. P. 3(a). Accordingly, the appeal is dismissed.

### Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which BRANDON O. GIBSON and KENNY ARMSTRONG, JJ., joined.

Cavender C. Kimble, Birmingham, Alabama, for the appellants, Renal Care Group, Inc., and Nephrology Associates, P.C.

Robert L. Delaney, Nashville, Tennessee, for the appellees, Michael Tomlin, and The Tomlin Company.

### OPINION

#### BACKGROUND AND PROCEDURAL HISTORY

This is an action for breach of consulting contracts. Nephrology Associates, P.C.,[1] and Renal Care Group, Inc., ("Appellants") own and operate dialysis clinics across the

_____
[1] The parties stipulated that Nephrology Associates, P.C., is a medical practice professional

country.[2] On November 12, 2010, Michael Tomlin ("Appellee") filed suit in the Chancery Court of Davidson County alleging that Appellants had failed to pay him real estate commissions owed under contracts entered into by Appellants' predecessors in interest. Specifically, Mr. Tomlin claimed that Appellants had failed to pay his commission for negotiating the original lease for a dialysis clinic located in East Orange, NJ, and additionally had failed to pay him commissions owed on renewals of original leases he negotiated for clinics at seventeen other locations.[3]

Mr. Tomlin's claims arose from a business arrangement that he originally entered into with Dr. Jeffrey Hymes, Dr. Jerome Tannenbaum, and Mr. Steven Harrison. In the late 1990s, Dr. Hymes, Dr. Tannenbaum, and Mr. Harrison were in the process of starting a national renal care company,[4] and they hired Mr. Tomlin to assist in locating potential sites and negotiating leases for dialysis clinics. On November 20, 1997, Mr. Tomlin entered into a "Letter of Agreement" with Dr. Hymes, Dr. Tannenbaum, and Mr. Harrison.[5] Pursuant to the "Letter of Agreement," Mr. Tomlin was responsible, *inter alia*, for locating sites and negotiating leases for dialysis clinics, for which he was to be compensated on a commission basis. On May 19, 1999, Mr. Tomlin entered into a

corporation composed of nephrologists.

[2] The parties have stipulated that Renal Care Group, Inc., is the entity financially responsible for any judgment that may be entered in Mr. Tomlin's favor.

[3] The parties stipulated that Mr. Tomlin negotiated the original leases for the following eighteen locations: (1) Tullahoma, TN; (2) Gallatin, TN; (3) Springfield, TN; (4) West Nashville, TN; (5) East Nashville, TN; (6) Franklin, TN; (7) Madison, TN; (8) Jasper, AL; (9) Round Rock, TX; (10) Austin, TX; (11) Bastrop, TX; (12) Marble Falls, TX; (13) Harrison, NJ; (14) Sarasota, FL; (15) Pittsburgh, PA; (16) University City, MO (the parties also refer to the University City location as the St. Louis location); (17) Fort Payne, AL; and (18) Columbia, TN. The parties stipulated that Mr. Tomlin has been compensated for commissions due under the original leases in Joint Exhibit 3, except that Mr. Tomlin claimed he was not compensated for a commission that he alleged he was owed on the original East Orange, NJ lease. The parties also stipulated that a direct subsidiary of Appellant is a current tenant at all nineteen original locations, except for clinics at the following locations: Tullahoma, TN, vacated in 2012; Fort Payne, AL, vacated in 2009; and Columbia, TN, vacated in 2008. Because Mr. Tomlin stipulated that he was compensated for the original Fort Payne, AL lease and the original Columbia, TN lease and that those locations were vacated before the leases' initial ten (10) years terms expired, he did not assert claims related to those locations at trial.

[4] In February 1998, the original company was subsumed into Dialysis Associates, LLC. Dialysis Associates, LLC, also did business under the names "NEWCO" and National Nephrology Associates. National Nephrology Associates, Inc., managed the clinics owned by Dialysis Associates, LLC. Following an investment from a venture capital firm in December 1998, National Nephrology Associates, Inc., purchased Dialysis Associates, LLC. In 1999, National Nephrology Associates, Inc., merged with Renal Care Group, Inc. Renal Care Group, Inc., has since been acquired by Fresenius Medical Care of North America, a national health care business.

[5] The original company is referred to in the "Letter of Agreement" as "Newco."

second agreement labeled, "Consulting Agreement," with the original renal care company's successor in interest, National Nephrology Associates, Inc. The "Consulting Agreement" contained, *inter alia*, the following provision:

> 2. *Compensation; Reimbursement*. In consideration of Consultant's consulting services set forth in Paragraph 1 above, the Company shall pay to Consultant or his assigns the following:
>
> a. The Company shall pay Consultant a four percent (4%) commission on the gross rental payments of all leases upon signing of the lease and at the renewal or extension of such leases. This commission is based on the rental rate negotiated by Consultant only; however, the four percent (4%) commission shall also be paid on any amount the lessor agrees to pay toward renovation or other improvements.

The parties made several joint stipulations before the case proceeded to a bench trial. The parties stipulated that, pursuant to the agreement, Mr. Tomlin negotiated the original leases for dialysis clinics at the following eighteen locations: Tullahoma, TN; Gallatin, TN; Springfield, TN; West Nashville, TN; East Nashville, TN; Franklin, TN; Madison, TN; Jasper, AL; Austin, TX; Round Rock, TX; Bastrop, TX; Marble Falls, TX; Harrison, NJ; Sarasota, FL; Pittsburgh, PA; University City, MO; Columbia, TN; and Fort Payne, AL. The parties further stipulated that Mr. Tomlin was paid his commissions on the original leases; however, Mr. Tomlin claimed he was entitled to a commission on the original East Orange, NJ lease. Appellants denied that Mr. Tomlin negotiated the original East Orange, NJ lease, and denied that he was entitled to a commission. The parties stipulated that the dialysis clinics located in Tullahoma, TN, Fort Payne, AL, and Columbia, TN have been vacated. However, the parties stipulated that the dialysis clinics at the remaining sixteen locations remain open, and that those clinics are currently operated by a direct subsidiary of Renal Care Group, Inc. Concerning the scope of Mr. Tomlin's claims, the parties stipulated in paragraph eighteen of the joint "Stipulations of Facts for Trial" that, "[p]laintiff [sought] to recover commissions that may be due under the lease documents in Joint Exhibit 3 other than the original leases; except that Plaintiff also seeks to recover a commission on [the] East Orange, NJ original lease." Joint Exhibit 3 contains leases from seventeen locations.[6]

After prolonged discovery and several continuances, on September 13, 2013, the case proceeded to a bench trial. On July 11, 2016, the trial judge issued a "Memorandum and Order." The trial court found the 1999 "Consulting Agreement" to be controlling

---

[6] Specifically, Joint Exhibit 3 contains leases for clinics located in the following locations: (1) Tullahoma, TN; (2) Gallatin, TN; (3) Springfield, TN; (4) West Nashville, TN; (5) East Nashville, TN; (6) Franklin, TN; (7) Madison, TN; (8) Jasper, AL; (9) Round Rock, TX; (10) Austin, TX; (11) Bastrop, TX; (12) Marble Falls, TX; (13) Harrison, NJ; (14) Pittsburgh, PA; (15) Sarasota, FL; (16) University City, MO; and (17) East Orange, NJ.

because it superseded the earlier "Letter Agreement." After interpreting the "Consulting Agreement," the trial court ruled on at least one of Mr. Tomlin's claims for commissions based upon leases for the following eleven locations: (1) Tullahoma, TN;[7] (2) Gallatin, TN;[8] (3) Springfield, TN;[9] (4) West Nashville, TN;[10] (5) East Nashville, TN;[11] (6) Franklin, TN;[12] (7) Jasper, AL;[13] (8) Round Rock, TX;[14] (9) Austin, TX;[15] (10) Harrison,

[7] Mr. Tomlin made one (1) claim related to one (1) alleged renewal of the original Tullahoma, TN lease. The original Tullahoma, TN lease was entered into on November 14, 1997, for an initial term of eleven (11) years and six (6) months. The trial court ruled Mr. Tomlin was entitled to a commission on the "First Amendment" to the Tullahoma, TN lease, which was executed on December 10, 2008.

[8] Mr. Tomlin made one (1) claim related to one (1) alleged renewal of the original Gallatin, TN lease, originally executed on April 20, 1998, for an initial term of ten (10) years. The trial court ruled that Mr. Tomlin was not entitled to a commission on the "First Amendment" to the Gallatin, TN lease, which was executed on March 3, 2008, and except as specifically amended, reaffirmed the provisions of the original lease, including ¶ 29 of the original lease.

[9] Mr. Tomlin made one (1) claim related to one (1) alleged renewal of the original Springfield, TN lease, originally executed on May 20, 1998, for an initial term of ten (10) years. The trial court ruled that Mr. Tomlin was entitled to a commission based upon the "First Amendment to Lease" to the Springfield, TN lease, which was executed on July 20, 2009, and except as specifically amended, reaffirmed the provisions of the original lease, including ¶ 29 of the original lease.

[10] Mr. Tomlin made one (1) claim related to one (1) alleged renewal of the original West Nashville, TN lease, originally executed on May 28, 1998, for an initial term of ten (10) years. The trial court ruled that Mr. Tomlin was entitled to a commission based upon the "First Amendment" to the West Nashville, TN lease. The "First Amendment" was executed on March 28, 2008, and, except as specifically amended, reaffirmed the provisions of the original lease, including ¶ 29 of the original lease.

[11] Mr. Tomlin made two (2) claims related to two (2) alleged renewals of the original East Nashville, TN lease, originally executed on July 1, 1998, for an initial term of ten (10) years. The trial court ruled that Mr. Tomlin was entitled to a commission based upon the "First Amendment" to the East Nashville, TN lease; however, the trial court ruled Mr. Tomlin was not entitled to a commission based upon the "Second Amendment" of the lease because the court concluded the "Second Amendment" was not a renewal. The "First Amendment" and "Second Amendment," executed on April 29, 2008, and November 20, 2009 respectively, except as specifically amended, reaffirmed the provisions of the original lease, including ¶ 26 of the original lease.

[12] Mr. Tomlin made three (3) claims related to three (3) alleged renewals of the original Franklin, TN lease, originally executed on December 14, 2008, for an initial term of ten (10) years. The trial court ruled that Mr. Tomlin was not entitled to commissions based on any of his three (3) claims in connection with the Franklin, TN original lease.

[13] Mr. Tomlin made one (1) claim related to one (1) alleged renewal of the original Jasper, AL lease, originally executed on April 30, 1999, but effective on May 1, 1999. The trial court held that Appellants exercised an option to renew the original Jasper, AL lease, and that Mr. Tomlin was entitled to a commission on the renewal.

[14] Mr. Tomlin made one (1) claim related to one (1) alleged renewal of the original Round Rock, TX lease, originally executed September 10, 1999, and modified and ratified on September 10, 1999, for

- 4 -

NJ;[16] and (11) East Orange, NJ.[17] The trial court also entered a declaratory judgment in Mr. Tomlin's favor stating, "[t]he court hereby declares that Mr. Tomlin is entitled to receive future commissions of 4% of gross rental payments of all renewal or extension leases, based on the rental rate he negotiated, as well as on any amounts the lessor agrees to pay toward renovation or other improvements[.]"

On August 5, 2016, the trial court issued a judgment in favor of Mr. Tomlin for $192,298 for the commissions owed on the renewals or extensions for the following leases: Tullahoma, TN; Springfield, TN; West Nashville, TN; First Amendment to East Nashville, TN; Jasper, AL; Round Rock, TX; and the November 2000 and July 2002 modifications to the original Harrison, NJ lease. The court ordered that no commissions were owed on the following locations: Gallatin, TN; the second Amendment to East Nashville, TN; Franklin, TN; Austin, TX; and the third Amendment to Harrison NJ. On September 6, 2016, Appellants filed a motion to alter, amend, or vacate the judgment. Also on September 6, 2016, Appellee filed a motion for an award of discretionary costs. After a hearing, the trial court denied Appellants' motion to alter, amend, or vacate the judgment and granted Mr. Tomlin's motion for discretionary costs. Appellants timely appealed.

---

an initial term of eleven (11) years. The trial court ruled that Mr. Tomlin was entitled to a commission on the "First Amendment to Lease Agreement," executed November 23, 2009.

[15] Mr. Tomlin made two (2) claims related to two (2) alleged renewals of the original Austin, TX "Sublease Agreement," originally executed on September 10, 1999. The trial court ruled that both amendments were new leases, and Mr. Tomlin was not entitled to commissions based on either of his claims. The trial court also held that the statute of limitations had tolled on Mr. Tomlin's claims in connection with the Austin, TX alleged renewals.

[16] Mr. Tomlin made three (3) claims related to three (3) alleged renewals of the original Harrison, NJ lease. The trial court held that Mr. Tomlin was entitled to be paid a commission based upon the first and second amendments to the original Harrison, NJ lease, but that he was not entitled to be paid a commission on the third lease because it was an entirely new agreement. The court also ruled that the statute of limitations did not preclude Mr. Tomlin's claims, even though the first two amendments took place in November 2000 and July 2001 respectively, because Mr. Tomlin did not discover that the original leases had been amended until this litigation ensued.

[17] Mr. Tomlin made two (2) claims related to commissions he alleged he was owed based upon the East Orange, New Jersey lease. First, Mr. Tomlin claimed that he was entitled to a commission on the original lease that he alleged he negotiated for the East Orange, New Jersey location. Second, Mr. Tomlin asserted a second claim based upon a commission he alleged he was owed based upon an amendment to the original East Orange, New Jersey lease. The amendment was executed on January 6, 2008. The court held Mr. Tomlin was not entitled to a commission on the original lease, because his claim was precluded based upon the doctrine of *res judicata*.

ANALYSIS

Although the parties have each raised several substantive issues for our review, Tennessee Rule of Appellate Procedure 13(b) requires this Court to first consider whether we have subject-matter jurisdiction. Tenn. R. App. P. 13(b); *Person v. Kindred Healthcare, Inc.*, No. W2009-01918-COA-R3-CV, 2010 WL 1838014, at *2 (Tenn. Ct. App. May 7, 2010). It is well-settled law that, "[u]nless an appeal from an interlocutory order is provided for by the rules or by statute, appellate courts have jurisdiction over final judgments only." *Bayberry Assocs. v. Jones*, 783 S.W.2d 553, 559 (Tenn. 1990) (citation omitted); *see also In re Estate of Henderson*, 121 S.W.3d 643, 645 (Tenn. 2003) (noting that an appeal as of right may be taken only after the entry of a final judgment). Tennessee Rule of Appellate Procedure 3(a) provides:

> In civil actions every final judgment entered by a trial court from which an appeal lies to the Supreme Court or Court of Appeals is appealable as of right. Except as otherwise permitted in rule 9 and in Rule 54.02 Tennessee Rules of Civil Procedure, if multiple parties or multiple claims for relief are involved in an action, *any order that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable and is subject to revision at any time before entry of a final judgment adjudicating all the claims, rights, and liabilities of all parties.*

A final judgment is one that completely defines the parties' rights and leaves nothing else for the trial court to do. *Davis v. Davis*, 224 S.W.3d 165, 168 (Tenn. Ct. App. 2006) (citation omitted).

In total, the trial court ruled on seventeen of Mr. Tomlin's claims and issued a declaratory judgment. As explained in detail below, our exhaustive review of the record and the trial court's orders indicate that the trial court did not rule on at least six of Mr. Tomlin's claims. Specifically, the trial court failed to rule on Mr. Tomlin's claims for commissions allegedly owed based upon lease renewals at the following locations: (1) Bastrop, TX; (2) Marble Falls, TX; (3) East Orange, NJ; and (4) University City, MO.[18] Therefore, the judgment is not final such as to confer subject-matter jurisdiction on this Court, and we must dismiss this appeal.

---

[18] The trial court may also have failed to rule on claims arising from alleged amendments of leases for clinics located in Pittsburgh, PA, Sarasota, FL, and Madison, TN. The initial term of these leases ran for fifteen (15) years. The parties stipulated that a direct subsidiary of Appellant is the current tenant at all three locations. The leases expired by their own terms during the period of time between the date of trial and the date when the trial court issued its opinion. Based upon the record, it appears Appellants have denied that these leases were amended before the expirations of their initial terms. However, if Appellants did not deny those leases were amended before the time of trial, Mr. Tomlin has asserted outstanding claims for commissions on alleged renewals related to those locations.

- 6 -

### 1. Bastrop, TX; One Claim

The original lease for the clinic located in Bastrop, TX was executed on March 3, 2000, for an initial term of fifteen years. Although the record is unclear concerning the exact date of the amendment, the record clearly indicates that the Bastrop, TX lease was amended at some point.[19] Mr. Tomlin has claimed he is entitled to a commission on the "First Amendment" to the original Bastrop, TX lease, alleging that it is a renewal of the original lease. The trial court failed to rule on Mr. Tomlin's claim that he is entitled to a commission on the "First Amendment" to the Bastrop, TX original lease.

### 2. Marble Falls, TX; Two Claims

The original lease for the clinic located in Marble Falls, TX was executed on March 3, 2000, for an initial term of fifteen years. The record indicates that the lease was amended twice, on February 2, 2001 and March 13, 2001, respectively.[20] The trial court failed to rule on Mr. Tomlin's claims for commissions allegedly owed under the alleged amendments-renewals of the Marble Falls, TX lease.

### 3. East Orange, NJ; One Claim

The original lease for the clinic located in East Orange, NJ was executed on March 23, 2001, for an initial term of ten years. Mr. Tomlin claimed he was entitled to a commission on the original lease, and he also claimed that he was entitled to a commission for an amendment to the original lease executed on January 1, 2008. The trial court ruled that Mr. Tomlin's claim for a commission on the original lease was barred by *res judicata*. However, the trial court failed to rule on Mr. Tomlin's claim for a commission based upon the alleged amendment-renewal to the original lease.

### 4. University City, MO; Two Claims

The original lease for the clinic located in University City, MO was entered into on October 23, 2000, for an initial term of fifteen years. The record indicates that the lease was amended twice, on May 24, 2002, and July 28, 2002, respectively.[21] The trial court failed to rule on Mr. Tomlin's claims for commissions allegedly owed under the amendments to the University City, MO lease.

---

[19] Except as specifically modified, the amendment of the original Bastrop, TX lease ratified and republished the original lease in its entirety, including paragraph twenty-nine of the original lease.

[20] Except as specifically modified, the amendments to the original Marble Falls, TX lease ratified and republished the original lease in its entirety, including paragraph twenty-nine of the original lease.

[21] Except as specifically modified, the amendments to the original University City, MO lease ratified and republished the original lease in its entirety, including paragraph twenty-nine.

## CONCLUSION

After an exhaustive review of the record, we have determined that the trial court failed to rule on at least six of Mr. Tomlin's claims. In the absence of a final judgment, we do not have subject-matter jurisdiction over this appeal. Accordingly, the appeal is hereby dismissed, and the case is remanded for further proceedings as may be necessary and consistent with this Opinion. Costs of the appeal are assessed against the Appellants, Nephrology Associates, P.C., and Renal Care Group, Inc., and their surety, for all of which execution may issue if necessary.

_____
ARNOLD B. GOLDIN, JUDGE